UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MARY NEUMER, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>　　vs.<br>ALDRIDGE PITE HAAN, LLP,<br>　　　　　　Defendant. | Case No.: 17-cv-1502<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats.

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Mary Neumer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 427.301(17) in that the alleged debt allegedly arose from one or more consumer transactions with agreements to defer payment – specifically, medical bills.

6. Defendant Aldridge Pite Haan, LLP ("Aldridge") is a law firm with its principal offices located at 3575 Piedmont Road NE, Suite 300, Atlanta, GA 30305.

7. Aldridge is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Aldridge is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Aldridge is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. On or about March 24, 2017, Aldridge mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Froedtert Hospital" ("Froedtert"). A copy of this letter is attached to this Complaint as Exhibit A.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

12. Upon information and belief, Exhibit A was the first written communication Defendant sent to Plaintiff regarding the alleged debt Exhibit A attempts to collect.

13. Exhibit A contains the statutory validation notice as required by the FDCPA, 15 U.S.C. § 1692g:

> **Notice pursuant to Fair Debt Collection Practices Act** (15 U.S.C. §1692 et seq.): Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this notice, the debt will be assumed to be valid by the debt collector. If you notify this law firm in writing within the thirty (30) day period that this debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and mail you a copy of the verification of this debt or, if applicable, a copy of judgment. Upon your written request within the thirty (30) day period, we will also mail you with the name and address of the original creditor, if different from **Froedtert Hospital**

Exhibit A.

2

14. The alleged debt listed in Exhibit A was incurred for medical services. The debt referenced in Exhibit A was allegedly incurred for the provision of medical services. Thus, the debt was incurred for personal, family, or household purposes.

15. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, Froedtert mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

16. With respect to the medical debt listed in Exhibit A, Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, Foredtert mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

17. Exhibit A was the first letter Aldridge sent to Plaintiff regarding this alleged debt.

18. Aldridge's letter as a whole is confusing and misleading to the unsophisticated consumer.

19. Exhibit A is printed on Aldridge's attorney letterhead with the firm's website address, which includes the word "law."

20. Exhibit A also refers to Aldridge as a law firm twice in the opening paragraph and references the attorneys at the law firm:

3

> This law firm represents **Froedtert Hospital**. Your account with **Froedtert Hospital** has been turned over to this law firm. No attorney at this firm has personally reviewed the circumstances of your account. You are indebted to **Froedtert Hospital** in the above amount.

21. <u>Exhibit A</u> falsely implies that an attorney was meaningfully involved in the collection of the accounts in March 2017.

22. The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

23. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

24. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002); *Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

25. The Third Circuit has held that collection letters, from debt collection law firms, purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

26. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

4

27. Exhibit A does not include a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005). The statement "No attorney at this firm has personally reviewed the circumstances of your account," is virtually identical to the language the Third Circuit rejected as an attempted disclaimer in *Lesher*.

28. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

29. Aldridge is a high-volume debt collector.

30. Upon information and belief, from the time that consumer debts are placed with Aldridge for collection until the time that a legal complaint is drafted, the only employees of Aldridge who are directly involved in the collection process of consumer debts are non-attorneys.

31. Moreover, Aldridge is frequently engaged to send collection letters to consumers with no intent that Aldridge will ever file a lawsuit to collect the debt.

32. Upon information and belief, none of Aldridge's attorneys are licensed to practice in Wisconsin.

33. Upon information and belief, a significant portion of Aldridge's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

34. Upon information and belief, at the time Exhibit A were mailed to Plaintiff and the class, no attorney at Aldridge had reviewed any documentation underlying the alleged debts,

5

including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

35. Upon information and belief, at the time <u>Exhibit A</u> was mailed to Plaintiff, no attorney at Aldridge had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Aldridge or a third party mailing company generated and mailed <u>Exhibit A</u> as part of a batch of identical, except for personal information, form debt collection letters.

36. Upon information and belief, at the time <u>Exhibit A</u> were mailed to Plaintiff and the class, no attorney at Aldridge had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney at Aldridge meaningfully involved in the decision to send <u>Exhibit A</u> to Plaintiff and the class.

37. Upon information and belief, no attorney at Aldridge personally reviews each class member's collection letter in any meaningful sense, before the letter is mailed.

38. Upon information and belief, no attorney at Aldridge makes an individualized assessment of the class member's circumstances or liability, before <u>Exhibit A</u> is mailed to each

**Re: Froedtert Hospital**

    **Account Number(s):**

ng:

**Amount of the Debt:** $2,213.03
**APH File Number:** ▉9270

<u>Exhibit A</u>.

40. <u>Exhibit A</u> states that the amount of the debt is $2,213.03.

6

Case 2:17-cv-01502-JPS   Filed 11/01/17   Page 6 of 15   Document 1

41. Upon information and belief, the debt that Defendant was attempting to collect with Exhibit A had previously been reduced to judgment in Milwaukee County Circuit Court Case No. 16-sc-15119. A copy of the Wisconsin Circuit Court Access (CCAP) Court Record Events for Milwaukee County Case No. 16-sc-15119 is attached to this complaint as Exhibit B and a copy of the Notice of Judgment that was docketed in Milwaukee County Case No. 16-sc-15119 on June 30, 2016 is attached to this complaint as Exhibit C.

42. Exhibit B states that, on October 23, 2017, the Court "Received request from APH LLP to convert file to e-file.cn." Exhibit B.

43. Upon information and belief, "APH LLP" is Aldridge Pite Haan, LLP, the debt collector in this case.

| | |
|---|---|
| Amount of Judgment: | $ 2065.03 |
| Interest: | 0.00 |
| Attorney Fee: | 150.00 |
| Filing Fees: | 98.00 |
| Service Fees: | 50.00 |
| Docketing Fee: | 0.00 |
| Witness Fee: | 0.00 |
| Pre-Judgment Interest: | 0.00 |
| Other costs: | 0.00 |
| **Total Money Judgment:** | **$ 2363.03** |

Exhibit C.

46. Exhibit C states that the "Total Money Judgment" entered on June 24, 2016 was in the amount of $2,363.03.

47. Exhibit A, sent to Plaintiff nine months later, states that the "Amount of the Debt" is $2,213.03.

48. The difference between the amount stated in Exhibit C and the amount stated in Exhibit A is exactly $150.00, equal to the amount of the "Attorney Fee" that was awarded along with the judgment.

7

49. Plaintiff did not make any payment to the creditor or any debt collector acting on the creditor's behalf between June 24, 2016, when the judgment was entered, and March 24, 2017, when Defendant sent its letter.

50. Plaintiff was confused by Exhibit A.

51. The unsophisticated consumer would be confused by Exhibit A.

52. The statutory $150 attorney fee is part of the judgment entered on June 24, 2016.

53. Post-judgment amounts incur statutory interest. Wis. Stat. § 814.04(4).

54. Understating the balance encourages a consumer's payment to be short of the actual amount due and incur additional interest over time.

55. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

56. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

## The FDCPA

57. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge

8

to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

58. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

9

60.  15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of----(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

61.  15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

62.  15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

63.  15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

64.  15 U.S.C. § 1692g states:

a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

65.  The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

## THE WCA

66. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

67. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

68. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

69. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

70. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

71. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

72. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

73. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

74. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

75. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

76. Wis. Stat. § 427.104(1)(k) states that a debt collector may not: "Use a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a[n] . . . attorney-at-law when it is not."

77. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

78. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

12

79. Exhibit A creates the false impression that an attorney at Aldridge had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

80. Before mailing Exhibit A to Plaintiff and the class, no attorney at Aldridge had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen*, 307 F.3d at 635.

81. Defendant violated 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT II – FDCPA

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. Exhibit A fails to state the amount of the debt in a non-confusing manner by understating the amount owed by an amount equal to the attorney fee described in Exhibit C.

84. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), and 1692g(a)(1).

## COUNT III – WCA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. Exhibit A creates the false impression that an attorney at Aldridge had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and Exhibit A itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

87. <u>Exhibit A</u> purports to be from an attorney-at-law when there was no attorney-at-law that was meaningfully involved in the collection efforts at the time the letter was sent.

88. <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner by understating the amount owed by an amount equal to the attorney fee described in <u>Exhibit C</u>.

89. If a debtor paid the balance stated in <u>Exhibit A</u>, Defendant, or the creditor, could continue to attempt to collect the remaining balance and could add post-judgment interest to the balance.

90. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(j), 427.104(1)(k), and 427.104(1)(L).

## CLASS ALLEGATIONS

91. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) between October 30, 2016 and October 30, 2017, inclusive, (e) that was not returned by the postal service.

92. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

93. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

94. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

95. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

96. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

97. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 1, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com